```
           IN THE UNITED STATES DISTRICT COURT FOR
            THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                              *
JOHN M. COHEE, JR., t/a
Cohee Farms, et al.,          *

     Plaintiffs,              *

v.                            *     CIVIL NO.: WDQ-05-3359

GLOBAL HORIZONS, INC., d/b/a  *
Agrilabor,
                              *
     Defendant.
                              *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

John M. Cohee, Jr., and his wife, Diana B. Cohee, sued Global Horizons, Inc. ("Global Horizons"), for breach of contract. Pending are Global Horizons's motions: (1) for judgment as a matter of law or, in the alternative, for a new trial (Paper No. 99); (2) to alter or amend the judgment (Paper No. 100); and (3) for a new trial (Paper No. 101). For the following reasons, the motions will be denied.


I.  Background

The Cohees operate Cohee Farms in Caroline County, Maryland. Compl. ¶ 3. In the Spring of 2005, the Cohees planted 55 acres of watermelon and 65 acres of sweet corn. *Id.*

1

¶ 4.  To secure adequate field workers to harvest the crops, the Cohees entered into a contract with Global Horizons, a California corporation with its principal place of business in Los Angeles, California, to provide the necessary labor (the "Contract").  Compl. ¶¶ 2, 5-6, Ex. 1 (cited *infra* as the "Contract") at 1.

Under the Contract, Global Horizons promised to provide ten field workers between June 25 and September 10, 2005 to harvest and package the Cohees' watermelon and sweet corn.  *Id*. §§ 1, 2. Although the Cohees performed under the Contract, Global Horizons failed to provide the promised labor, and the Cohees were deprived of their benefit of the bargain.  Compl. ¶ 6-14.

On October 13, 2005, the Cohees filed suit in the Circuit Court for Caroline County, Maryland, and Global Horizons removed the case to this Court for diversity of citizenship on December 15, 2005.  Papers No. 1, 2.

On May 24, 2007, following a four-day trial, the jury found Global Horizons in breach and awarded the Cohees $490,000 for lost profits and $37,186 for unnecessary expenses in 2005, $150,000 for lost profits in 2006, and $142,500 for lost profits in 2007.  Paper No. 91.

II.  Discussion

II.A.  Standards of Review

II.A.1.  Motion for Judgment as a Matter of Law

Under Federal Rule of Civil Procedure ("Rule") 50, a
district court should grant judgment after trial as a matter of
law "when a party has been fully heard on an issue and there is
no legally sufficient evidentiary basis for a reasonable jury to
find for that party on that issue." *Reeves v. Sanderson
Plumbing Prod., Inc.,* 530 U.S. 133, 149 (2000).  The court must
review all the evidence in the record, and draw all reasonable
inferences in favor of the nonmoving party; the court may not
make credibility determinations or weigh the evidence.  *Id.* at
150.


II.A.2.  Motion to Alter or Amend Judgment

Under Rule 59(e), a district court has the discretion to
alter or amend a judgment "only in very narrow circumstances:
(1) to accommodate an intervening change in controlling law; (2)
to account for new evidence not available at trial; or (3) to
correct a clear error of law or prevent manifest injustice."
*Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002) (internal
quotation marks omitted).  "Moreover, Rule 59(e) motions may not
be used to make arguments that could have been made before the

3

judgment was entered."  *Id.*


II.A.3.  Motion for a New Trial

Under Rule 59(a), a district court may grant a new trial if: "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."  *Atlas Food Sys. & Servs., Inc. v. Crain Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996).  In determining whether to grant a new trial, the court may weigh the evidence and consider witness credibility.  *Cline v. Wal-Mart Stores, Inc.,* 144 F.3d 294, 301 (4th Cir. 1998).


II.B.  Analysis

Global Horizons offers the same three arguments in support of each of its motions[1]: (1) the Contract did not require the Defendant to provide housing, thus Global Horizons had no obligation to perform; (2) the Contract unambiguously and expressly excludes consequential damages, including lost profits and future earnings for 2005 through 2007; and (3) there was no

---

[1] Indeed, the arguments in each motion are copied verbatim.

4

evidence to support the sums awarded at trial for 2006 and 2007.

II.B.1.  The Obligation to Provide Worker Housing

Global Horizons argues that it can not be liable for a breach of the Contract because it had no obligation under the Contract to provide housing for its workers, and thus no duty to perform when no housing was otherwise made available.

II.B.1.a.  California Law of Contract Interpretation

Subsection 9(a) of the Contract provides that the "agreement shall be governed in accordance with the laws of the State of California without regard to its conflict of laws principles."  Contract § 9(a).

"California recognizes the objective theory of contracts, under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (Cal. Ct. App. 2003) (internal citations and quotation marks omitted).  "Interpretation of a contract is solely a question of law unless the interpretation turns upon the credibility of extrinsic evidence." *Badie v. Bank of America*  67 Cal. App. 4th 779, 798-99, (Cal. Ct. App.

1998).

"Under California law, the fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting." *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002) (*citing* Cal. Civ. Code § 1636).  "When a contract is reduced to writing, this intent 'is to be ascertained from the writing alone, if possible.'"  *Id.* (*quoting* Cal. Civ. Code § 1639).  "If contractual language is clear and explicit, it governs."  *Powerine Oil Co., Inc. v. Superior Court*, 118 P.3d 589, 598 (Cal. 2005) (internal quotation marks omitted).

> A [contract] provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable.  The fact that a term is not defined in the policies does not make it ambiguous.  Nor does disagreement concerning the meaning of a phrase, or the fact that a word or phrase isolated from its context is susceptible of more than one meaning.  Language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.  If an asserted ambiguity is not eliminated by the language and context of the [contract], courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist . . .

*Id.* (internal citations and quotation marks omitted).

The Contract includes a full integration clause, including a provision that all modifications must be made by a writing signed by the parties.  Contract § 11(c).  In such a case,

"California law allows the admission of parol evidence only if it is (1) 'relevant' to prove (2) 'a meaning to which the language of the instrument is reasonably susceptible.'"  *U.S. Cellular*, 281 F.3d at 938 (*quoting Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 644 (1968)).

II.B.1.b.  Contract Interpretation

The Contract states that: (1) "[Global Horizons] shall, at its own expense, furnish farm labor as required by [the Cohees]" (Contract § 2(a)); (2) "[Global Horizons] shall have the sole responsibility of paying the salaries, benefits, incentives, payroll taxes and all other expenses relating to each of [Global Horizons's] workers"  (*id*. § 3(b)); (3) "[Global Horizons] shall provide, at its sole expense, whatever ancillary support, equipment, supplies, transportation and facilities as required by law and for its workers to adequately and properly perform their respective tasks" (*id*. § 5); and (4) "if transportation OR housing is provided for the Workers by [Global Horizons], the surcharge specified . . . shall be Forty percent (40%), and if transportation AND housing are provided for the Workers by [Global Horizons], the surcharge shall be Forty-five percent (45%).  The Cohees' obligations under the Contract are essentially limited  to providing at least 30 hours of work per

7

week for each worker, and compensating Global Horizons for the
workers' labor and for any transportation or housing provided
for the workers by Global Horizons.  *Id*. § 8.

Thus, the essence of the Contract is a bilateral agreement
by which the Cohees promise to provide work and compensation in
exchange for Global Horizons's promise to provide labor and the
necessary "ancillary support" that its workers required to
perform the work.  Contract § 5.  Although "housing" is not
expressly included in the Contract's subsection obligating
Global Horizon to provide that ancillary support (*id*.), it would
be unreasonable to interpret the Contract in its entirety as not
placing the burden of securing worker housing squarely on Global
Horizons' shoulders.  Nothing in the Contract resembles an
express or implied promise by the Cohees to provide worker
housing or assist Global Horizons in doing so.  The third
alternative, that neither party is obliged to provide housing
for the workers, is not a reasonable interpretation "in the
context of the instrument as a whole, and in the circumstances
of [the] case."  *Powerine*, 118 P.3d at 598.  The Contract
obliges Global Horizons to pay "all other expenses relating to
each of [its] workers" (Contract § 3(b)), Global Horizons
promises to provide "whatever ancillary support," including
transportation and facilities, the workers will need to perform

8

their tasks (*id*. § 5), and there is no exception made for providing workers the necessity of housing.

The Contract required Global Horizons to provide the labor required by the Cohees, a duty the jury found was due and that Global Horizons breached to the Cohees' detriment.  Global Horizons' argument that it had no obligation to provide its workers housing, and that because no housing was otherwise provided its duty to provide labor was either never due or excused, fails as a matter of law.

II.B.2.  Availability of Damages under the Contract

Global Horizons argues that § 8(g) of the Contract excludes all consequential and incidental damages, including lost profits and future earnings, in the event of a breach by Global Horizons.  It further contends that if the Court finds § 8(g) ambiguous, Mr. Cohee's trial testimony shows the parties' intent was that the damages sought by the Cohees would not be permitted under the Contract.

Subsection 8(g) provides:

If the [Cohees are] delayed in making any payments due to [Global Horizons] hereunder, [Global Horizons] reserves the right to remove its workers and cease providing Services hereunder, until such balance is paid by [the Cohees]. Payment for work performed and hours lost will be the responsibility of the [Cohees].  *In no event shall [Global Horizons] be held responsible or liable for any*

9

> *consequential or incidental damages, including without*
> *limitation any lost profits, that [the Cohees] may suffer*
> *as a result of [Global Horizons's] actions under this*
> *Agreement.*

Contract § 8(g) (emphasis added).

The Defendants' broad interpretation is unreasonable because of the provision's context and the phrase "as a result of [Global Horizons's] actions under this Agreement." *Id.*

Section 8 begins with the clause "[Global Horizons's] compensation shall be calculated as follows." *Id.* § 8. Subsection 8(g) defines the consequences of the Cohees' failure to make a timely payment, including Global Horizons's "right to remove its workers and cease providing Services." *Id.* § 8(g). The subsection preceding § 8(g) provides Global Horizons's responsibility to submit a wage statement to the Cohees, the Cohees' duty to pay undisputed amounts within two days, and a mechanism for resolving disputes arising from the billing statements. *Id.* § 8(f). The subsection following § 8(g) provides for finance charges for late payments. *Id.* § 8(h). Moreover, language affecting the Contract' enforcement and the Cohees' remedies are located in the following section, entitled "Governing Law and Waiver," which allocates expenses for legal actions to enforce the contract, and provides that "[the Cohees] may not deduct damages from amounts owed on [Global Horizons's]

10

invoices."  *Id*. § 9.

Although Global Horizons argues that the term "actions" may include the failure to perform an obligation, the more limited "actions under this Agreement" cannot be reasonably interpreted to include conduct that is not in accordance with the Contract. In the context of § 8(g), the phrase supports a more limited interpretation, restricting the disputed provision's application to harm caused by the actions permitted Global Horizon under § 8(g) that would in other circumstances render it liable for breach.

As the disputed provision is not reasonably susceptible to Global Horizons's interpretation, the parol evidence elicited from Mr. Cohee at trial bearing on that interpretation is inconsequential.  *U.S. Cellular*, 281 F.3d at 938.  Accordingly, the Court legally concludes that the damages sought by the Cohees were not excluded by the Contract.


II.B.3.  Evidence of Damages in 2006 and 2007

Global Horizons finally argues that the evidence adduced at trial does not support the sums awarded for 2006 and 2007.  It contends that the Cohees' expert, Thomas L. Trice IV, based his opinion of the Cohees' lost profits in 2006 on the assumption of available labor, but Mr. Cohee admitted at trial that the Cohees

11

had no labor in 2006.  Global Horizons further argues that the
Cohees' expert inability to precisely quantify lost profits for
2007 makes the jury's 2007 damage award overly speculative.


II.B.3.a  2006 Lost Profits

     Although Mr. Cohee's testimony may be construed as
admitting that profits from sweet corn and watermelon in 2006
were precluded by a lack of available labor in 2006, rather than
Global Horizons's harm to his customer base, the "lack of that
reliable labor force" in Mr. Cohee's testimony may be easily
understood as a reference to the lack of Global Horizons workers
in 2005:

     Q.  Did the lack of the reliable labor force, *the lack of
         those Global Horizons workers in 2005* cause you to
         lose customers?

     A.  Yes, it did.

     Q.  Did it cause you to lose customers in 2005?

     A.  Yes, it did.

     Q.  Did it cause you to lose them in 2006?

     A.  Yes, it did.

     Q.  Was, then, the lack of that reliable labor force the
         only reason you didn't grow sweet corn and watermelon
         in '06?

     A.  Yes, sir.

     Q.  Or, was in the combination of the lack of that force

and the damage that Global [Horizons] had done to you
when they didn't provide that force to you in the
prior year?

A.  That combination just done it in.

Pls.' Opp'n to Def.'s Mot. for a New Trial (Paper No. 44) Ex. 2

(excerpt from direct examination of Mr. Cohee and Trice) 15 *ll.*

7-21 (emphasis added).  Rather than quoting directly from Mr.

Cohee's testimony in its argument, Global Horizons quotes

Trice's recollection of Mr. Cohee's earlier testimony:

Q.  All right.  And I think we've established at this point
    that Mr. Cohee has testified that he could not get
    labor in 2006, correct?

A.  That was the reason that he was not planting.

    . . .

Q.  And therefore, since your calculation depends upon the
    availability of labor, you would agree with me that,
    since that premise is not in this case, that those
    2006 damages would not apply?

A.  I am not sure that I can conclude cause and effect
    here, but I would say to you that he clearly has
    testified--I mean, I heard him say that he did not--he
    did not have labor for 2006, and therefore, he could
    not raise vegetables.

Def.'s Mem. in Supp. of Def.'s Mot. for a New Trial, Ex. 3

(excerpt of cross-examination of Mr. Cohee and Trice) 49 *l.* 25,

50 *ll.* 1-4, 51 *ll.* 2-9.  Although Trice may have thought Mr.

Cohee's testimony undercut a key assumption for his 2006 damages

calculation, the jury could have understood Cohee's testimony as

13

referring only to the lack of a reliable labor force in 2005, and chosen to discount Trice's recollection.  Thus, Trice's understanding of Mr. Cohee's testimony does not exclude possible findings by the jury that labor was available in 2006,[2] the Cohees chose not to farm watermelons and sweet corn because their customer base was damaged by the 2005 labor shortfall, and Trice's method for estimating lost profits was reliable.

II.B.3.b.  2007 Lost Profits

Because Trice affirmed on cross examination that he could provide "no opinion as far as a quantifiable number is concerned for 2007 and forward" lost profits, Global Horizons contends that the 2007 lost profit award must be excluded as overly speculative.  Def.'s Mem. in Supp. of Def.'s Mot. for a New Trial, Ex. 4 (excerpt of cross-examination of Mr. Cohee and Trice) 46 *ll*. 17-25, 47 *ll*. 1-5.

"[D]amages for the loss of prospective profits . . . are generally recoverable . . . [if] their occurrence and extent may be asertained [sic] with reasonable certainty from the past volume of business and other provable data relevant to the

---

[2] Other farmers in the same county testified to harvesting watermelon and sweet corn in 2006, implying that labor was available.

14

probable future sales.  *Grupe v. Glick*, 160 P.2d 832, 840 (Cal. 1945).  Awards of lost profit damages must be supported by substantial evidence.  *Humetrix, Inc., v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001).  But because "lost profits are 'necessarily an estimate,' . . . their 'amount cannot be shown with mathematical precision.'"  *Id.* (*quoting Portland 76 Auto/Truck Plaza, Inc. v. Union Oil Co.,* 153 F.3d 938, 947 (9th Cir. 1998), *cert. denied,* 526 U.S. 1064 (1999); *Berge v. Int'l Harvester Co.,* 190 Cal. Rptr. 815, 822 (Cal. Ct. App. 1983)).

Thus, Trice's inability to precisely quantify 2007 lost profits does not diminish the substantial evidence of prospective economic damages offered at trial.  Mr. Cohee's testimony on his revenues and costs growing alternate crops, the testimony by other Caroline County farmers on their watermelon and sweet corn yields, sales prices, and labor costs in 2006, and the method offered by Trice for calculating the Cohees' lost profits with those data, provided the jury with sufficient evidence to project the occurrence and extent of the Cohees' 2007 lost profits with a reasonable degree of certainty.

III.   Conclusion

For the reasons stated above, the verdict was permissible under the Contract, and the evidence at trial was of sufficient weight to support the jury's award for lost profits in 2006 and 2007.  Accordingly, Global Horizons's motions will be denied.


 July 19, 2007                        _____/s/_____
Date                                 William D. Quarles, Jr.
                                     United States District Judge